The PROCTER & GAMBLE COMPANY, Plaintiff,

v.

WEYERHAEUSER COMPANY, a Washington corporation, J.C. Penney Company, Inc., a Delaware corporation, and Montgomery Ward & Co., Inc., an Illinois corporation, Defendants.

No. 81 C 1221.

United States District Court, N.D. Illinois, E.D.

Jan. 12, 1989.

Lord, Bissell and Brook, Hugh L. Moore and Stephen A. Milwid, Chicago, Ill., Morgan, Finnegan, Pine, Foley & Lee, Jerome G. Lee, Richard Komson and Alfred P. Ewert, New York City, Fredrick H. Bruan, John M. Pollaro and Richard C. Witte, Proctor & Gamble Co., Cincinnati, Ohio, for plaintiff.

George P. McAndrews, D. Dennis Allegretti and John J. Held, Jr., McAndrews Held & Malloy, Bradley J. Hulbert, Chicago, Ill., Francis J. Mooney, Jr., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Following a jury trial on its patent claims, plaintiff was awarded $2,374,320 damages and $414,000 prejudgment interest for a total of $2,788,320. It was also determined that exceptional circumstances justified awarding plaintiff attorney's fees. *See* 35 U.S.C. § 285. Plaintiff thereafter petitioned for $2,189,774 attorney's fees, $572,394 related disbursements, and $123,095 costs for a total of $2,885,263.[1] The case was referred to a magistrate who recommended awarding $1,254,285 attorney's fees plus in-house counsel fees yet to be determined, $572,170 disbursements, and $48,872 costs for a total of $1,875,327 plus. Both sides objected to the recommendation as to fees and disbursements. Neither side objects to the amount of costs recommended by the magistrate.

 It is well established that the party seeking fees has the burden of establishing what a reasonable fee is and that failure to provide sufficient documentation will result in a reduction of the amount requested. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *PPG Industries, Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed.Cir.1988); *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1203–05 (D.Mass.1982), *aff'd*, 717 F.2d 622 (1st Cir.1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). Records adequate for billing purposes are not necessarily adequate for purposes of awarding attorney's fees. The court substantially agrees with the magistrate who stated:

Large law firms in this city and elsewhere frequently litigate to excess, and staff cases with large numbers of lawyers who all must keep abreast of what is happening in the case but whose involvement is merely for the convenience of the firm and other lawyers. If ... the client is willing to pay the fees for this kind of representation, that is no concern of this court, but the court is not inclined to encourage overstaffing by requiring the losing party to pay for it.

There is nothing in the record which allows the court to determine whether or not this matter was or was not reasonably staffed. The court is unable to determine from this petition how many lawyers read the same memos, attended the same depositions, attended the same status conferences or read briefs and correspondence just to keep informed.

It is therefore impossible to fully and accurately determine which expenses were unnecessary or duplicative.

Plaintiff supported its fee claim by supplying the court with copies of the monthly or periodic statements issued by its attorney, and separate documents showing the names of attorneys and attorney time on given dates. It is impossible to correlate this kind of a presentation. It does not show exactly what any attorney did on any date.[2] No value judgment can be made as to the need for or worth of such time charges. Such data may be acceptable for client billing, but are not sufficient to impose fees on an adverse party. It is readily

---

1. These figures include fees and expenses of Eric Spector not included in the petition as originally filed.

2. Some of the Lord, Bissell documentation refers to specific work being done. However, there is no means of correlating this with work done by Morgan, Finnegan.

apparent, though, that the fees and disbursements claimed by plaintiff are excessive. A precise and accurate reduction cannot be performed, but an analysis, nevertheless, must be done. The methodology employed necessarily involves some balancing calculations because of the inadequacy of the information supplied.

Subsequent to the magistrate's recommendation, the court ordered plaintiff to provide a recomputation of the time and cost of pretrial court appearances and deposition appearances based on the use of only one attorney for each. Plaintiff was also ordered to recompute trial time based on the use of only two attorneys. By plaintiff's own calculation this results in a reduction of 49.6% ($247,843 to $124,911). But even the recomputed time, to the extent it can be evaluated, is overstated. The recomputed time includes 11 status hearings, 2 pretrial conference dates, and one motion call where out-of-town counsel billed 8 hours for appearances at each of those. Even the times billed by local counsel while attending status or motion calls exceeds 2 hours on eight occasions. One hour is more than enough time to bill for attending most, if not all, status and motion calls. The court will allow two hours each for the two pretrial conference dates. Based on these generous allotments, the fees allowed for court appearances (other than at trial) are recomputed as follows:

| hours | rate | amount |
|---|---|---|
| 1 | $ 64 | $ 64 |
| 1 | 68 | 68 |
| 1 | 77 | 77 |
| 2 | 104 | 208 |
| 4 | 113 | 452 |
| 2 | 124 | 248 |
| 1 | 140 | 140 |
| 3 | 150 | 450 |
| 6 | 160 | 960 |
| 1 | 163 | 163 |
| 6 | 165 | 990 |
| 4 | 198 | 792 |
| Total 32 | ($144.13) | $4,612 |

This results in an allowable amount of $4,612 which is 10.3% of the $44,563 originally claimed for court appearances and 20.3% of the $22,689 recomputed claim for court appearances. The time spent on depositions cannot be fully evaluated since there is no information as to how long any particular deposition took nor how much of the time billed includes travel time. The amounts, however, appear excessive, though not overly so. For example, 24 hours are billed for two depositions taken on September 21 and 22 in Cincinnati, Ohio. The recomputed amounts are reduced 10% from $43,565 to $39,209. Plaintiff's records were insufficient to precisely determine how much time was actually devoted to the trial. However, the recomputed amount will not be questioned.

The appropriate attorney's fee allowed for court appearances, depositions, and the trial are as follows:

| | |
|---|---|
| Court appearances | $ 4,612 |
| Depositions | 39,209 |
| Trial | 58,658 |
| Total | $102,479 |

$102,479 is 41.3% of the $247,843 originally claimed. Additionally it appears that the $247,843 figure is a misstatement as to what was originally claimed. Plaintiff does not include in this figure any amounts claimed for in-house counsel's attendance at court and depositions. Thus, the $102,479 allowed is somewhere under 40% of what was originally claimed.

Plaintiff was also given the opportunity to provide a breakdown and recomputation of other work done. Plaintiff did not take the opportunity to do so. Presumably, there would be an even greater reduction as to other billings. In any event, the lack of necessary data justifies a substantial reduction. The court will allow only 30% of the other amounts claimed for attorney's fees for outside counsel.

■ Defendants object to allowing any fees for in-house counsel. Fees for in-house counsel are appropriate where counsel is performing legal work that would otherwise be performed by outside counsel. *See Scott Paper Co. v. Moore Business Forms, Inc.*, 604 F.Supp. 835, 837 (D.Del. 1984). However, any such claim must be fully documented and was not in this case. The affidavit of Frederick Braun, one of plaintiff's in-house counsel, states the following:

6. Throughout the four-year pendency of this case, I have been heavily involved in all aspects of the case in conjunction with trial counsel, Morgan/Finnegan and local counsel, Lord/Bissell. A Procter & Gamble attorney participated at every proceeding and at every stage of the action. In important part, we participated personally to improve efficiency and coordination and to avoid waste, duplication and unnecessary expenses. In addition, I was responsible for reporting on a monthly basis to P & G management on the status and progress of the litigation.

\* \* \* \* \* \*

8. During the four-year pendency of the litigation, Mr. Witte, Pollaro and I reviewed every paper prepared and filed by Morgan/Finnegan and Lord/Bissell. We also reviewed all papers filed by defendant Weyerhaeuser, and provided Procter & Gamble counsel with our comments and suggestions. We attended and participated at status calls, depositions, hearings, pre-trial conferences and trial. In important part, we met with trial counsel to formulate trial strategy.

This statement does not indicate that in-house counsel performed any work that was not duplicative of work performed by outside counsel. Also, much of what they did was simply performing the role of a client, i.e. keeping abreast of what was happening in the litigation, providing counsel with information known to the client, and advising counsel of client's views as to litigation strategy. Plaintiff has not referred to a single specific act of in-house counsel that involved work that would otherwise have been performed by outside counsel. No fees are allowed for the work of plaintiff's in-house counsel.

Turning to the question of disbursements, as with the amounts claimed for fees, these expenses generally are not identifiable with particular activities. Much of the claimed amounts are for travel not

shown to have been necessary. As with the attorney's fees, 30% of the disbursements of the law firms is allowed.[3]

██ Other disbursements were paid directly by plaintiff. The $50,086 for travel of in-house counsel is not allowed since it has not been shown in-house counsel performed any necessary legal services. In *Mathis v. Spears*, 857 F.2d 749, 757–58 (Fed.Cir.1988), the Federal Circuit held that a broader scope of expenses were recoverable under § 285 than under Fed.R.Civ.P. 54(d) and 28 U.S.C. §§ 1821 and 1920. It is unclear if this applies to all awards under § 285 or only those based on bad faith litigation. In any event, defendants now raise for the first time an objection that certain disbursements paid by plaintiff are not recoverable expenses. Since this argument was not raised before the magistrate, it is waived. Plaintiff, however, has not provided a single bill to document the $262,772 in Procter & Gamble disbursements listed in its exhibit G to Braun's supplemental affidavit. It is also unclear what precisely some of the claimed expenses are since only generally referred to as expenses related to experts. Defendants raised before the magistrate and this court the issue of adequate documentation of these claimed expenses. Based on the lack of documentation, the $262,772 in disbursements are not allowed. In sum, none of the Procter & Gamble disbursements are allowed.

Since not objected to by either side, the $48,872 in costs[4] recommended by the magistrate is allowed.

Plaintiff claimed $2,189,774 for attorney's fees. Subtracting out the $247,843 claimed for court appearances, depositions, and trial and the $320,500 claimed for in-house counsel, $1,621,431 is claimed for "other fees" which presumably cover investigation, research, correspondence, and preparation of legal documents. Taking

---

**3.** Before computing 30%, the court will first subtract out the $224 in clearly unallowable expenditures referred to in footnote 3 of the magistrate's report.

**4.** It is noted that $48,872 is 39.7% of the amount originally claimed.

30% of this amount results in $486,429 in allowable other fees.[5] The amount allowed for disbursements is 30% of $259,312 which is $77,794. The total amount allowed is:

| | |
|---|---|
| Attorney's fees | $588,908 |
| Court appearances, trial, and depositions | $102,479 |
| Other | 486,429 |
| Disbursements | 77,794 |
| Costs | 48,872 |
| Total | $715,574 |

This total appears to be a reasonable award for this case.[6]

■ Plaintiff requests a further award of $90,273 for attorney's fees related to the petition for fees. Ordinarily, a reasonable fee would be allowed for such activity. However, given the deficient nature of plaintiff's fee petition and supporting briefs, no such amount is awarded.

■ Plaintiff also requests prejudgment interest on the fee award. The Federal Circuit recently held that prejudgment interest may be awarded on § 285 awards. *Mathis*, 857 F.2d at 760–61. Such awards, however, are permissible, not mandatory. *Id.* at 761. While this case involved exceptional circumstances, those circumstances were not the bad faith litigation involved in *Mathis*. Prejudgment interest on the fee award is not appropriate in this case and is not awarded.

*Mathis* also holds that postjudgment interest on fee awards is calculated based on the date a judgment is entered establishing the right to fees. 857 F.2d at 760. This rule applies to costs as well. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir.1983) (per curiam) (followed by *Mathis*). Postjudgment interest on today's judgment is calculated from July 5, 1985, the date the judgment awarding attorney's fees was entered.[7]

IT IS THEREFORE ORDERED that:

(1) The Clerk of the Court is directed to enter a judgment in favor of plaintiff and against defendants in the amount of $715,574 on account of attorney's fees, disbursements, and costs with interest on this amount accruing from July 5, 1985.

(2) The parties shall not file any further documents under seal without first obtaining the express leave of court as to the particular document to be filed under seal.

---

**5.** Since defendants do not object to the rates claimed for outside counsel, it is unnecessary to do a computation breaking down hours and rates allowed.

**6.** In order to provide the court with another measure of reasonableness, defendants—who have vigorously opposed the fee application—were ordered to provide information as to defendants' fees and charges from the time of receiving the complaint to and including trial. Defendants were billed for $1,147,727 attorney's fees and $133,678 disbursements. Although defendants had the greater burden in this litigation since they had to prove patent invalidity, their fees and disbursements are far less than the amount claimed by plaintiff. The amount billed to defendants is greater than the amount actually awarded to plaintiff, but defendants had the greater burden in this litigation and the amount billed would likely be reduced if it was subjected to scrutiny as part of a fee application. In any event, the amount billed to defendants is not a precise measure of an appropriate fee for plaintiff. The information does indicate, though, that the amount awarded to plaintiff is in a reasonable range.

Defendants were also asked to provide their analysis of a reasonable award. Defendants suggested a reasonable award would be $617,303 for 5815 hours of time plus $133,678 of disbursements based on defendants' own disbursements. This is a total of $748,981. While this figure is close to the amount actually awarded to plaintiff, this figure is not given significant weight in determining a reasonable fee. The method of calculating the 5815 hours is questionable.

**7.** The date of the entry of the judgment, not the date of the order, is controlling.